Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3266 | **DATE** | 5/28/2002 |
| **CASE TITLE** | Barbara Payne vs. Michael Pauley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted.
(11) ■ [For further detail see

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | MAY 29 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | | 48 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | | date mailed notice | |
| EF | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 29 2002

BARBARA PAYNE, )
)
    Plaintiff, )
)
v. ) Case No. 00 C 3266
) HONORABLE CHARLES R. NORGLE
MICHAEL PAULEY, )
    Defendant. )

## ORDER AND OPINION

CHARLES R. NORGLE, District Judge:

Before the court is Defendant's motion for summary judgment. For the following the reasons, Defendant's motion is granted.

### I. BACKGROUND[1]

This case involves claimed civil rights violations under 42 U.S.C. § 1983. On May 31, 1998, in Chicago Heights, a car was accidently driven off the road and into a brick residence. Defendant, Officer Michael Pauley ("Officer Pauley"), a Chicago Heights police officer, was the first to respond to the scene of the accident. After arriving on the scene, Officer Pauley determined that the vehicle was driven by Kyle Payne ("Kyle"). It is at this point that the facts are in dispute.

Officer Pauley offers the following version of events. Upon arriving at the scene, Officer Pauley observed a crowd of between twenty to forty individuals gathered in the yard of the residence that had been struck by the vehicle. Officer Pauley immediately determined that the unlicensed driver of the vehicle was 15 year old Kyle and arrested him. Officer Pauley

---

[1] The court takes the facts from the parties Local Rule 56.1 statements and accompanying briefs. Disputed facts are noted in the text.

handcuffed Kyle and placed him in the back seat of his squad car. At this point Plaintiff, Barbara Payne ("Payne"), Kyle's mother, entered the fray.

Payne immediately began a verbal assault on Officer Pauley. Payne then attempted to enter Officer Pauley's squad car and speak with her son, against the instruction of Officer Pauley. After Payne's unsuccessful efforts to enter Officer Pauley's squad car, Payne attempted to move the vehicle her son had driven into the residence. Not only did Payne's efforts prove unsuccessful, but she began to cause more damage to the residence. Contrary to Officer Pauley's instructions, Payne refused to stop her efforts to move the vehicle. Finally, Payne exited the vehicle, and Officer Pauley told the dispatcher to send a tow truck to his location. The request for a tow truck caused Payne to launch another verbal onslaught against Officer Pauley. At this point, Officer Pauley felt that Payne's actions were inciting the crowd around them. Officer Pauley called for backup to place Payne under arrest. Two officers responded to the call for backup and placed Payne under arrest. Payne resisted arrest. Finally, the two officers were able to control Payne, handcuff her, and place her in their squad car.

Payne offers a different version of events. Payne went to the scene of the incident when an unknown individual told her that her son had been in an accident. Upon arriving, and after several individuals from the crowd informed Payne that the police officer had mistreated her son, Officer Pauley began an argument with her, but she did not attempt to speak with her son. Payne admits participating in this argument, that lasted at least ninety minutes, and included derogatory statements directed at Payne by Officer Pauley. Payne never attempted to enter Officer Pauley's squad car. Additionally, Payne exchanged information with the owner of the residence and then, with the permission of Officer Pauley, attempted to move the vehicle. After Payne's failed

2

attempt to move the vehicle, Officer Pauley again launched a verbal attack against Payne, which again included derogatory statements, and Officer Pauley physically touching Payne with his chest. Officer Pauley then undid the snap which held his firearm in his holster, raised his arms above his head, and balled his fists with the intention of striking Payne. However, Officer Pauley was advised by the crowd yelling "hit her, hit her; If you hit her you know you are going down." Officer Pauley then told Payne she was under arrest and two officers who had arrived on the scene began to handcuff Payne. However, Officer Pauley insisted on handcuffing Payne, and grabbed her left arm and began arguing and struggling with the other officers. This struggle, with Payne's arm being moved back and forth behind her back by the struggling officers, lasted thirty minutes before Officer Pauley handcuffed Payne. Payne alleges significant injuries from the force used during her handcuffing.

Payne has filed this action claiming civil rights violation based on an unlawful arrest and excessive force used in her arrest. Officer Pauley moves for summary judgment, arguing that there are no disputed issues of fact, and that he is entitled to judgment as a matter of law.

## II. DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v.

3

William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c); Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Amercian Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at

4

574-78 (2d ed. 1983)). Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial. Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2001) (citing Anderson, 477 U.S. at 247-248).

## B. Unlawful Arrest and Excessive Force Claims

### 1. Qualified Immunity

"A [qualified immunity ruling] should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier, 533 U.S. at 200-201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

In determining whether an official is entitled to qualified immunity, the court uses a two-step inquiry. See Kelley v. Myler, 149 F.3d 641, 648 (7th Cir. 1998). The first step requires an analysis of the defendant's conduct, asking "whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts." See Saucier, 533 U.S. at 200-201. The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted. Sauicer, 533 U.S. at 194-195 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). Then, the second step must determine whether the law was clearly established at the time of the alleged violation, asking "'whether the law was clear in relation to the specific facts confronting the public official when he or she acted.'" See Kelly, 149 F.3d at 648 (quoting Biddle v. Martin, 992 F.2d 673, 675 (7th Cir. 1993) (quoting Apsotol v. Landau, 957 F.2d 339, 341 (7th Cir. 1992)); see also Saucier, 533 U.S. at

5

200-201. Thus, if the first step reveals that no constitutional violation occurred, qualified immunity ends any further inquiry. See Saucier, 533 U.S. at 200-201

### 2. Probable Cause

"With an unlawful arrest claim in a § 1983 action, when a defense of qualified immunity has been raised, [the court] will review to determine if the officer actually had probable cause, or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." Kelley, 149 F.3d at 648 (quoting Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir. 1998)). If reasonable officers would have believed that probable cause existed to arrest Payne, Officer Pauley is entitled to qualified immunity. Law enforcement officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." Kelley, 149 F.3d at 646 (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1246 (7th Cir. 1994)); see also Beck v. State of Ohio, 379 U.S. 89, 91 (1964). This is necessarily a fact-intensive inquiry that does not lend itself to definitive legal rules. Jones by Jones v. Webb, 45 F.3d 178, 181 (7th Cir. 1995) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Therefore, courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer-seeing what he saw, hearing what he heard." Kelley, 149 F.3d at 646 (quoting Mahoney v. Kesery, 976 F.2d 1054, 1057 (7th Cir. 1992)). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. "If so, the arrest is lawful even if the belief would have been mistaken." Kelly, 149 F.3d at 646. Thus, probable cause has been described as

a zone within which reasonable mistakes will be excused. Id. (quoting Sheik-Abdi, 37 F.3d at 1246). The fact that the arrestee is not actually convicted of the crime does not mean that probable cause did not exist to support the arrest. Kelley, 149 F.3d at 647.

Officer Pauley argues that he had probable cause to arrest Payne for obstructing a police officer, or at the very least for disorderly conduct. Officer Pauley contends that if the court considered his version of events, then he had probable cause to arrest Payne based on her actions for obstructing a police officer. Specifically, Payne's argument with and screaming at Officer Pauley and refusal to obey instructions, demonstrate probable cause to arrest her. Alternatively, Office Pauley argues that even if Payne's version of facts is to be believed, he had probable cause to arrest Payne for disorderly conduct based on Payne's admission of participating in an argument with Officer Pauley that incited the encircling, vocal crowd.

In contrast, Payne argues that there are not sufficient facts for a determination of probable cause. Payne contends that she never argued with Officer Pauley, much less screamed at him, or refused to obey any instructions. Further, Payne denies that any of her actions incited the crowd in any form or fashion. The court, even construing the facts in the light most favorable to Payne, finds the arguments of Officer Pauley persuasive.

Under Illinois law a person can be charged with resisting or obstructing a police officer if the person "knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a class A misdemeanor." 720 ILCS 5/31-1. Also under Illinois law a person can be charged with disorderly conduct if the person "does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace . . . ." 720 ILCS 5/26-1.

7

"Disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct 'almost defy definition.'" Biddle, 992 F.2d at 677 (quoting Lester v. City of Chicago, 830 F.3d 706, 714 (7th Cir. 1987)). "Whether particular conduct is disorderly therefore depends not only on the conduct itself but also on the conduct's unreasonableness in relation to the surrounding circumstances." Id. "Arguing with a police officer, even in a loud, offensive manner, may not, by itself, constitute disorderly conduct under Illinois law. But that does not mean that arguing with a police officer may never be disorderly conduct. Arguing with police officers can be disorderly conduct in Illinois, depending on the argument's circumstances and its tendency to create public disorder." Lester, 830 F.3d at 715. "[T]he reasonableness of a person's behavior is necessarily tied to the facts and circumstances of the situation in which he or she is placed, [, and] . . . . an officer on the job need not have proof beyond a reasonable doubt in order to make an arrest." Biddle, 992 F.2d at 677 (quoting McGaughey v. City of Chicago, 664 F.Supp. 1131, 1136 (N.D. Ill. 1987).

Here, it is clear, even construing the facts in the light most favorable to Payne, that Payne engaged in obscenity-laced argument with Officer Pauley, was warned that her conduct could result in her arrest, and did so in front of a group of 25 to 40 individuals who openly displayed hostility toward Officer Pauley. Payne admits that she engaged in an argument with Officer Pauley. Payne testified in her deposition that she "defend[ed] herself using her free speech rights." (Def.'s Mot. for Summ. J., Ex. C, pg. 4; Pltff.'s Local Rule 56.1 State of Additional Facts, Ex. A., pg. 13.)[2] Further, the testimony of Rasheedah Gray ("Gray"), a witness to the

---

[2] Plaintiff's Local Rule 56.1 Statement of Additional Facts has attached several exhibits. None of the exhibits have page numbers. Additionally, Defendant has submitted exhibits that do not contain page numbers. Both parties have submitted only specific pages of depositions. Therefore, the court,

8

events, demonstrates that Payne participated in an argument with Officer Pauley. Gray testified at his deposition that Payne swore at Officer Pauley during a thirty minute "heated" exchange. (See Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. N, pg. 10.)

Additionally, Payne was warned that her conduct could result in her arrest. Payne quibbles and asserts that Officer Pauley never warned of arrest, but simply told that her she was going to be arrested. (See Pltff.'s Response to Mot. for Summ. J., pg. 14.; Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. A., pg. 25.) According to Payne, this "threat" occurred after an hour and a half of arguing with Officer Pauley, and that she was not placed in handcuffs at that time. Rather, Officer Pauley stood by her and made derogatory statements "for a long time." (See Pltff.'s Local Rule 56. 1 Statement of Additional Facts, Ex. A, pg. 26.) Payne makes continual references to derogatory statements made by Office Pauley. Payne does not allege any type of race-based claim. Nor has any of these alleged derogatory statements been detailed in any extent or form. Further, the alleged derogatory statements are not corroborated by any evidence or witnesses other than Payne's self-serving testimony. But what is corroborated is that Payne refused to follow Officer Pauley's instructions. Gray's testimony reflects that Officer Pauley asked Payne to discontinue her attempt to enter his squad car and her attempt to move the vehicle involved in the accident, and that Payne did not comply with either order. (See Def.'s Response to Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. N, pg. 3.; Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. N, pp. 7-9.) Thus, it is clear that

---

when citing to a page in an exhibit in Plaintiff's or Defendant's filings will consider each exhibit separately and number the pages starting with the first page of the exhibit.

Officer Pauley warned Payne she would be arrested, even though Payne uses the misnomer of a threat, if she continued with her actions.

Lastly, all parties agree that a crowd of 25 to 40 individuals had gathered as a result of the accident. The crowd was openly hostile towards Officer Pauley.

These facts present a situation in which Payne's action obstructed Officer Pauley's investigation of the crash and the driver's actions, and had the potential of developing into a serious and threatening crowd control situation. Payne's actions clearly impeded Officer Pauley's investigation when Payne argued with him and refused to obey his instructions. Further, Payne's conduct incited the crowd to greater levels of agitation and open hostility. It is abundantly clear that Officer Pauley had probable cause to arrest Payne for obstructing a police officer, or at the very least disorderly conduct. See Kelley, 149 F.3d at 647-648 (quoting Biddle, 992 F.2d at 676 (the Seventh Circuit has held that even if probable cause did not exist for the crime charged, proof of probable cause to arrest an individual on a loosely related charge is also a defense)). As a result of this court's finding there was probable cause for arrest, Officer Pauley is entitled to qualified immunity. Because the arrest was constitutional the court will not further address the claim of unlawful arrest.

### 3. Excessive Force Claim

Claims of excessive force do not change the analysis for qualified immunity, however, the jury question of whether the force used was excessive is distinct from the court's question of whether qualified immunity applies. See Saucier, 533 U.S. at 203-207. Once again, the first step of the qualified immunity analysis is whether the facts alleged show the officer's conduct

violated a constitutional right. See Saucier, 533 U.S. at 200-201; see also Kelley, 149 F.3d at 648 (quoting Biddle, 992 F.2d at 675 (quoting Apsotol, 957 F.2d at 341)).

Officer Pauley argues that Payne argued with and screamed profanities at him and refused to obey instructions. These factors when combined with the elements of resisting arrest and of a hostile crowd, which grew more hostile based on the actions of Payne, justified the use of reasonable force in handcuffing Payne. Payne argues that Officer Pauley's actions were both violent and threatening. Payne contends that Officer Pauley unsnapped the holster to his gun, raised his arms over his head, balled up his fists and ran at her, hitting her with his chest. Payne further contends Officer Pauley physically grabbed and struggled over her arm with other officers for thirty minutes and then forcefully snapped the handcuff on her left wrist. Payne asserts that the force used to handcuff her left wrist caused the following: wrist fracture, carpel tunnel syndrome, soft tissue neck and back injuries. Even assuming the facts in the light most favorable, the court does not find the arguments of Payne persuasive.

The court's analysis is concerned primarily with the force used in the handcuffing of Payne. The surrounding circumstances help place Officer Pauley's conduct in context. See Phillips, 123 F.3d at 592. As the court previously indicated, Officer Pauley was faced with an individual, Payne, who argued with and directed profanities against him and refused to obey his orders. (See infra pp. 8-10.) Further, the actions of Payne only served to agitate the crowd that had gathered and was openly hostile to Officer Pauley. (See infra pp 8-10.) With this in mind the court looks to the force used to handcuff Payne.

The Supreme Court stated in Graham v. Connor, 490 U.S. 386 (1989), that use of force is contrary to the Fourth Amendment if it is excessive. The Supreme Court held in Graham that

11

"all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Phillips v. City of Milwaukee, 123 F.3d 586, 592 (7th Cir. 1997) (citing Graham, 490 U.S. at 395). Due to the fact-specific nature of the inquiry, the determination whether a police officer utilized excessive force depends on the totality of the circumstances surrounding the encounter. Philips, 123 F.3d at 592 (citing Fazell v. Flanigan, 102 F.3d 877, 882-83 (7th Cir. 1996)). The court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (citing Tennesse v. Garner, 471 U.S. 1, 8 (1985)). The "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Philips, 123 F.3d at 592 (quoting Graham, 490 U.S. at 396-397) (internal citations omitted). This inquiry on qualified immunity is a question of law. See Saucier, 533 U.S. at 197. "[The] Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Saucier, 533 U.S. at 208 (quoting Graham, 490 U.S. at 396). The court must allow for "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

Here, Officer Pauley used a reasonable amount of force in effectuating the arrest of Payne. Payne claims that initially Officer Pauley, with an another officer, struggled with Payne for approximately thirty minutes before placing her left arm in handcuffs. This claim is unsupported by any evidence in the record other than Payne's own deposition testimony, but if true, the inference is that Payne resisted handcuffing for thirty minutes. The police reports detail that the assisting officers, Officers Christelli and Maciareillo, were on the scene for no longer than a few minutes before they placed Payne under arrest and transported her to the police station. (See Def.'s Mot. For Summ. J., Ex. E.) Officer Chirstelli is noted in the dispatch report as Unit 172 and Officer Maciareillo is noted in the dispatch report as Unit 599. (See id.) Unit 172 and 599 were dispatched to the scene at 16:45. Both Units arrived on scene at 16:53. (See id.) By 16:54 both units had left the accident scene and were headed to lockup with Payne. (See id.) By 16:58 both units had arrived at the lockup and by 17:04 both units were cleared from the investigation. (See id.) The total time that assisting Officers Christelli and Maciareollo were at the scene of the accident and placing Payne under arrest is under two minutes. (See id.)

Further, there is evidence that indicates that Payne resisted arrest. Mr. Gray again testified during his deposition that Payne struggled when she was being handcuffed and continually questioned why she was being arrested. (See Def.'s Response to Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. N., pg. 4.) Gray testified that the arrest of Payne was not "very quick and easy." (See id.) In fact, Gray testified that Payne continued to resist after she was handcuffed. (See id.)

Lastly, Payne contends that she suffered several injuries, which implies the force Officer Pauley used was excessive. Payne asserted at various points, from her complaint to her written

13

briefs, that she suffered a fractured wrist, carpal tunnel syndrom, and soft tissue neck and back injuries. However, the medical records demonstrate a different reality. All of the medical records submitted indicate that no fracture or dislocation of the wrist occurred. (See Def.'s Mot. for Summ. J., Ex. D; Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. C, E, F, G, H, J, K, L.) The only injury the medical records indicate on the day of Payne's arrest is bruising and swelling. (See Def.'s Mot. for Summ. J., Ex. D.; Pltff.'s Local Rule 56.1 Statement of Additional Facts, Ex. C.) Additionally, some of the medical records subsequent to Payne's arrest refer to carpal tunnel and the possibility of carpal tunnel syndrome, but there is never any specific diagnosis. The medical records indicate complaints of soft tissue neck and back injuries, but not until December of 1998, some seven months after the arrest. Regardless if the medical records support Payne's alleged carpal tunnel syndrom or soft tissue injuries, there is not a causal link established between these injuries and Payne's handcuffing. This is supported by the opinion of Dr. M. Mark Soriano. (See Def.'s Mot. for Summ. J., Ex. F.) Dr. Soriano states that the records demonstrated that Payne suffered no serious injuries as a result of the handcuffing, rather her only injuries were bruising and swelling. (See Def.'s Mot. for Summ. J., Ex. F.) More significantly, Dr. Soriano finds no causal connection between Payne's alleged carpal tunnel syndrome and soft tissue injuries and the handcuffing. (See Def.'s Mot. for Summ. J., Ex. F.)

Based on these facts, and considering the context of the arrest, Officer Pauley was justified in the amount of force that he used to place Payne in handcuffs. Specifically, the combative nature of Payne, her refusal to obey instructions, and the hostility of the crowd all contributed to the climate. More significantly, are the facts that Payne resisted arrest and she

14

suffered only a slight injury from the force used by Officer Pauley. According to the deposition testimony of Payne's own witness, Gray, Payne resisted arrest. While the medical records demonstrate that the only effects of the handcuffing were minor swelling and bruising on Payne's left wrist.

Officer Pauley was faced with the potential scenario that the crowd's hostility could materialize into action. Obviously, Officer Pauley's concern to control the scene, especially Payne who seemed aware of her ability to incite the crowd, was justified, if not demanded. As Officer Pauley has pointed out, this court as well as others have acknowledged the force necessary to secure an arrestee for handcuffing. See Trout v. Frega, 926 F.Supp. 117, 122 (N.D. Ill. 1996) (Norgle, J.); Pearson v. Sain, 2001 WL 1203572 (N.D. Ill. 2001) (Zagel, J.); Brant v. Cass, 2001 WL 910106 (N.D. Ill 2001) (Reinhard, J.); Apostal v. City of Crystal Lake, 1995 WL 692680 (N.D. Ill. 1995) (Reinhard, J.); Brandon v. Village of Maywood, 157 F. Supp.2d 917, 929 (N.D. Ill. 2001) (Bucklo, J.); Platek v. Village of Lisle, 1994 WL 444787 (N.D. Ill. 1994) (Gottschall, J.). The use of force by Officer Pauley was reasonable.

As a result of the court's finding that Officer Pauley's use of force was reasonable, Officer Pauley is entitled to qualified immunity in terms of the excessive force claim.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 5-28-02